CECIL v. BEAVER *et al.*

1. **Conveyance:** ADVANCEMENT: TRUST: PRESUMPTION. Where a father has purchased land and paid for it himself, but caused the title to be taken in the name of his children, the legal presumption is that this is an advancement to the children and not a trust in favor of the father; but this presumption may be overcome by clear

| 28 | 241 |
| 90 | 544 |
| 28 | 241 |
| d92 | 153 |
| 28 | 241 |
| 100 | 480 |
| 28 | 241 |
| 107 | 136 |
| 107 | 374 |
| 28 | 241 |
| 111 | 210 |
| 111 | 252 |
| 28 | 241 |
| 122 | 548 |
| 28 | 241 |
| 130 | 462 |

and satisfactory evidence that a trust and not an advancement was intended.

2. —— DELIVERY: RECORDING OF CONVEYANCE BY GRANTOR. Where the deed of a father to a child is absolute in form and beneficial in effect, and the father voluntarily causes the same to be recorded, this is, in law, a sufficient delivery to the child, and the title to the land conveyed will pass thereby.

3. —— Whether, in such case, the parol evidence of the father as to his previous intention can be admitted to show a resulting trust in his favor, *quere.*

*Appeal from Marion District Court.*

SATURDAY, OCTOBER 23.

VOLUNTARY CONVEYANCE: DELIVERY OF DEED, ETC.— The defendants are the children of the plaintiff. The object of the petition is to remove the cloud which it is alleged that two deeds from the plaintiff to the defendants cast upon the title of the former to the lands thereby conveyed.

In 1859, one Beaver, having the legal title to a tract of land belonging to the plaintiff, conveyed the same, at the plaintiff's request, to his (the plaintiff's) minor children. The deed, when executed by Beaver, was delivered to the plaintiff, who subsequently, September 14, 1859, caused the same to be recorded.

In March, 1861, the plaintiff and his wife executed a deed to two of the plaintiff's children for certain other land. This deed was duly acknowledged on the same day, and in August, 1861, the plaintiff also caused this deed to be recorded.

The plaintiff commenced this suit in 1866.

The ground on which he bases his right to relief, as stated in the petition, is that the deeds were executed without consideration passing from the children and without their knowledge, and that they were never deliv-

ered and have always been in the possession and under the control of the plaintiff. It is claimed in the petition, that, in consequence of the *non-delivery of the deeds, no title passed*, yet, being recorded, they cast a cloud upon the plaintiff's title, and the prayer is for a decree removing the cloud.

Answer in denial of the material averments of the petition as to delivery of deeds; and claiming that they are valid as provisions for the children, and also, that the plaintiff caused the same to be executed with a view fraudulently to deprive his wife of dower and alimony, they living at the time unhappily together.

A large amount of testimony was taken.

The court below dismissed the petition.

The plaintiff appeals.

*McJunkin & Henderson* and *E. W. McJunkin* for the plaintiff.

*Atherton & Shoup* for the defendants.

DILLON, Ch. J. That the father received no consideration from his children for the conveyances; that they were

1. CONVEYANCE: advancement: trust: presumption.
minors when the deeds were made; *that the father in person and without explanation at the time caused the instruments to be recorded*, but has been in possession of them since their execution, and also in possession of the land, which is his farm,—are facts either not disputed or clearly established. The evidence shows, that, soon after the execution of the deeds, the children, or the most of them, were made acquainted with the fact. The deeds are absolute and unconditional in form, and beneficial in their character to the grantees.

The question has been much discussed by counsel as to the purpose of the father in the execution and recording thereof.

Cecil v. Beaver.

That they were not made by the father to defraud creditors is reasonably clear, since it is not shown that he was indebted at the time.

It is claimed by the defendants, that they were made by him to defraud his wife of alimony and dower. There is evidence of declarations to this effect by the father made to the wife when angry with her; but since she joined in the deeds, and does not claim that any force or fraud was used to induce her to execute them, this claim can scarcely be regarded as sufficiently established.

These two theories, then, must be laid out of the case. There are yet two others, which we proceed to notice. The basis for relief made by the petition, as before stated, is the voluntary character of the instruments and their *non-delivery*, by reason whereof it is insisted no title passed. This is the claim and only claim made by the plaintiff in the petition.

But in his evidence he testifies, in answer to the question why he made these deeds, that "he had enemies that he understood said they would try and break him up, and that he made the deeds to keep them from doing it." There is no evidence of any contemporary declarations of this character either at the time the deeds were made or recorded. There is some testimony as to declarations of the father, that he executed the deeds for the purpose of making provision for his children. The court, upon an examination of the evidence, is of opinion that the plaintiff has not established it as a fact that his purpose in executing the deed, was not to make a settlement upon his children, and that it was to place the title in them, not beneficially, but temporarily and for a specific purpose, and in trust for him. He has not proved that he made the deeds for the purpose of putting the property beyond the reach of his enemies.

It is shown that he conveyed the same lands to three of

the children as early as 1852, which was before the difficulties with his enemies arose.

Besides, it would be a most dangerous doctrine to hold that deeds, absolute on their face, and which had been on record for years, could be overthrown by the bare oath of the grantor, in an action to recover the land, that he did not intend that which is the plain legal effect of the deed, but something entirely different.

What the law would be if the petition had made the proper case, and the verbal evidence had shown (conceding its admissibility) that the plaintiff's sole purpose in making the conveyance to the children had been to place the land beyond peril of loss from expected and unjust litigation, there is no occasion to examine.

The conveyances to the children must be regarded as advancements to them; and if the deeds were delivered they are irrevocable.

Where a father has purchased land and paid for it, but has caused the title to be taken in the name of his children, the question has been much discussed as to the effect of this upon the rights of the father. The law is, that presumptively this is an *advancement* to the children, and not a *trust* in favor of the father. But this presumption may be overcome by clear and satisfactory evidence that a trust and not an advancement was intended. But where the father, having the title in himself, conveys directly to the children, acknowledges the deed and *places it on record*, I confess, without going so far as entirely to deny that it can be done, that I do not at present see on what principle the parol evidence of the father, as to his previous intention, can be admitted to show a resulting trust in his favor. It is unnecessary in this case to hold, that if such evidence is competent, it is not sufficient to establish the alleged trust. Both the petition and the argument of the plaintiff's counsel

assume, that, if the deeds were delivered the plaintiff is not entitled to relief.

In *Souverbye* v. *Arden*, 1 Johns. Ch. 240, Chancellor KENT examines the cases on this subject, and thus states the result: "A voluntary settlement, fairly made, is always binding in equity upon the grantor, unless there be clear and decisive proof that he never parted, nor intended to part, with the possession of the deed; and even if he retains it, the weight of authority is decidedly in favor of its validity, unless there be other circumstances, besides the mere fact of his retaining it, to show that it was not intended to be absolute."

*2. —— delivery; recording of conveyance by grantor.*

How can a party more effectually part with the deed than to place it of record? What stronger evidence can be had that he intended it to be absolute?

Where the deed to a child is absolute in form and beneficial in effect, and the grantor and father voluntarily causes the same to be recorded, this is in law a sufficient delivery to the infant, and the title to the lands conveyed will pass thereby. In such case actual manual delivery and a formal acceptance are not necessary. Of the effect of such a deed, and by what kind of evidence a trust can be established, no further observations are necessary. *Robinson* v. *Gould*, 26 Iowa, 89; *Masterson* v. *Cheek*, 23 Ill. 72; *Mitchell* v. *Ryan*, 3 Ohio St. 377; *Foley* v. *Howard*, 8 Iowa, 56; 3 Washb. Real Prop. (3d ed.) 261, top page and cases cited.

The principle of law above stated as to the delivery of instruments to infants is decisive against the case which the plaintiff makes in his petition, and which his counsel make in argument; on this we place our judgment, and hold that the plaintiff is not entitled to the relief demanded.

Affirmed.