DANIELS *v.* GOODWIN PONTIAC COMPANY.

1. AUTOMOBILES—IMPLIED CONTRACT TO REPAIR—GARAGE KEEPER'S LIEN.

Owner of automobile who left it at defendant's garage to ascertain what repairs were necessary *held,* to have impliedly authorized repairs made, where, notwithstanding no express authority was given by him, he knew repairs were being made, that defendant who had previously done some work on the car denied that previous workmanship was faulty and claimed authorization to repair from plaintiff's insurance adjuster, hence, defendant was entitled to a lien under the garage keeper's lien law (CLS 1954, § 570.301).

REFERENCES FOR POINTS IN HEADNOTES
[1] 12 Am Jur, Contracts § 5.
[2] 12 Am Jur, Contracts § 4 *et seq.*
[3] 12 Am Jur, Contracts §§ 352, 353.
[5] 58 Am Jur, Witnesses § 360.
[6] 58 Am Jur, Witnesses § 355 *et seq.*.

2. CONTRACTS—IMPLIED CONTRACT—INTENT.

A contract is implied where the intention as· to it is not mani-
fested by direct or explicit· words between the parties, but is
to be gathered by implication or proper deduction from the
conduct of the parties, language used or things done by them,
or other pertinent circumstances attending the transaction.

3. SAME—COMPENSATION—IMPLIED CONTRACTS.

The test of an implied contract for compensation is whether such
services were performed under circumstances fairly raising a
presumption that the parties understood. and intended that they
should be paid for, or at least that reasonable men in like sit-
uation as those who received and are benefited by the service
naturally would and ought to understand, and expect compen-
sation was to be paid.

4. WITNESSES—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED
—STATUTES.

Testimony of original plaintiff, in replevin action continued by
his administratrix, which had been given by him in previous
action in municipal court against same defendant was not ren-
dered incompetent in circuit court because of his later death,
by virtue of statute relative to testimony as to matters equally
within the knowledge of deceased (CL 1948, § 617.65).

5. SAME—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED—
WAIVER.

Plaintiff waived objections to the witnesses of defendant who
testified as to matters equally within the knowledge of her de-
ceased husband by having her attorney testify as to what the
deceased had testified to in court prior to his death on the
matter at issue in instant suit of replevin (CL 1948, § 617.65).

6. SAME—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED—
WAIVER OF OBJECTIONS AND STATUTE.

The party protected by the statute barring testimony by an op-
posite party because it pertained to a matter equally within the
knowledge of a party now deceased may (1) object to the tes-
timony and rely upon the objection; or (2) let the testimony
be received without objection and thereby waive the statute;
or (3) notwithstanding the objection, offer equally incompe-
tent testimony on the same matter, and thereby waive both the
objection and the statute (CL 1948, § 617.65).

Appeal from Kent; Verdier (Leonard D.), J. Sub-
mitted January 9, 1957. (Docket No. 20, Calendar

No. 46,922.)    Decided April 22, 1957.    Rehearing denied June 10, 1957.

Replevin by Alvie Daniels, continued in the name of Louise Daniels, administratrix, against Goodwin Pontiac Company for possession of automobile in contradiction of garage-keeper's lien.    Judgment for defendant.    Plaintiff appeals.    Affirmed.

*Alexander, Cholette, Buchanan, Perkins & Conklin* (*Don V. Souter*, of counsel), for plaintiff.

*Warner, Norcross & Judd* (*Conrad A. Bradshaw*, of counsel), for defendant.

KELLY, J.    Plaintiff's decedent (hereinafter referred to as Daniels) purchased a used Pontiac car from Robert Smith Mercury, Inc., and shortly after purchase brought the car to defendant's shop for repairs on the hydramatic transmission.

When engine trouble developed Daniels returned this car to the dealer from which he purchased same, namely, Robert Smith Mercury, Inc.

Very shortly after receiving the car again from Robert Smith Mercury, Inc., Daniels experienced trouble with the transmission and contacted defendant and was informed that if the defect was defendant's fault, then the repairs would be made without cost to Daniels but, if not, Daniels would have to pay for all repairs.    After dismantling the transmission, defendant notified Daniels that through no fault of their own water had entered and damaged the transmission.    Defendant suggested that Daniels might contact his insurance company to see whether his policy covered water damage.    Defendant's testimony established an inspection of the transmission by the insurance adjuster and an authorization by him to make the necessary repairs.    The insurance adjuster denied that he authorized the repairs.

Daniels knew the repairs were being made by defendant and called to ascertain when he could obtain his car.

Defendant refused to turn the car over to Daniels until the cost of the repairs ($296.94) was paid, and Daniels on December 17, 1954, commenced an action in the municipal court of Grand Rapids against Robert Smith Mercury, Inc., and defendant, alleging (1) that defendant was holding the car for the $296.94 repair bill; (2) that defendant Robert Smith Mercury, Inc., had put a used and defective transmission in the car after defendant Goodwin Pontiac had repaired same; and (3) that defendant's repair of the transmission resulting in the bill of $296.94 was without authorization by Daniels.

A trial before a jury was held in the municipal court on February 23, 1955, resulting in verdict and judgment for $296.94 against Robert Smith Mercury, Inc., and judgment in favor of defendant against Daniels for no cause of action. Robert Smith Mercury appealed to the Kent county circuit court.

On March 11, 1955, Daniels, while holding judgment against Smith Mercury, Inc., and while the appeal from the municipal to the circuit court was still pending, commenced the instant replevin action to regain possession of the car. Defendant accepted the personal bond of Daniels' brother as surety so as to permit the release of the car by the sheriff to Daniels. Daniels was killed in a motorcycle accident on May 15, 1955, and after his death the finance company repossessed the car.

The Smith Mercury appeal came on for trial in the Kent county circuit court on October 26, 1955. Because of Daniels' death, his attorney offered himself as a witness for the purpose of testifying as to what Daniels had said at the trial in the municipal court. The judgment against Robert Smith Mercury was affirmed.

In the present case judgment was entered to the effect that plaintiff take nothing by her suit and that defendant recover from plaintiff and her bondsman the sum of $296.94, with costs to be taxed. Plaintiff appeals.

Defendant's repair job is not challenged by plaintiff, either in regard to workmanship or as to the amount charged for the work. Plaintiff contends that defendant did not have either a lien under the garage-keeper's lien statute or a common-law lien, because the materials were furnished and the labor performed without the request or consent of Daniels.

Section 1 of the garage-keeper's lien statute provides, in part:

"That every garage keeper who shall in pursuance of any contract, expressed or implied, written or unwritten, furnish any labor, material or supplies shall have a lien upon any automobile or other motor propelled vehicle stored, maintained, supplied or repaired by him for the proper charges due for the storage, maintenance, keeping and repair thereof." CLS 1954, § 570.301 (Stat Ann 1952 Rev § 9.1711).

When plaintiff's attorney testified in the circuit court appeal from the municipal court, he stated that after Daniels replevied the car from defendant the finance company repossessed the car after Daniels' death "and the obligation is still owed to Goodwin Pontiac." When he testified in this replevin case, plaintiff's attorney stated: "It is true that Goodwin Pontiac still has a claim."

Plaintiff contends the court improperly decided this case on equitable grounds and calls attention to the following occurrence during trial:

*Plaintiff's attorney:* "Are we going to follow the law or be in a court of equity?

*"The Court:* Sometimes we got to disregard the law and do equity."

*Plaintiff's attorney:* "That is within the prerogative of the court. I feel you are wrong in so doing it. I came in on a replevin action—did they have the right to hold the car?

"*The Court:* You want a judgment for the return of this car plus the costs of the action, and I suppose, you still want to keep the money that you have not yet but will collect from the Robert Smith Company, although they are the ones that incurred the costs of repairing that car."

*Plaintiff's attorney:* "Not on our authorization.

"*The Court:* I don't care anything about authorization. It is an implied authorization, not a direct one."

*Plaintiff's attorney:* "My man never authorized it.

"*The Court:* Oh, I can't stomach you getting the return of that car and keeping this money when it is their money that went into the job of repairing that car. That is what I can't stomach. Let's be honest in any event."

The court in its opinion stated:

"A judgment for plaintiff for return of the car will not result in the car being returned as it has long since been repossessed by a prior lien claimant. It can only result in furnishing plaintiff with an excuse for not paying to defendant the very bill for the repair of the car, for which plaintiff already has a perfectly collectible judgment. It amounts to plaintiff saying to defendant: 'You repaired my car for $296.94 and you put it in shape so that my damages on account of the defective work done by Robert Smith was satisfied, but now I not only want my car returned but I am not going to pay you for putting the car in shape.' It is merely a case of plaintiff eating her cake and wanting it too. This may not be done in any court where justice is still supposed to prevail.

"While it is true that Daniels did not sign a statement authorizing defendant to make the repairs,

there was nevertheless an implied authorization which under the garage-keepers' lien law would give defendant a lien; and even if this be disputed, there was at the least a common-law lien."

The facts in this case sustain the court's conclusion that there was an implied authorization under the garage-keeper's lien law giving to defendant a lien.

In *Miller* v. *Stevens,* 224 Mich 626, 632, this Court stated:

"A contract is implied where the intention as to it is not manifested by direct or explicit words between the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction."

In *Spence* v. *Sturgis Steel Go-Cart Co.,* 217 Mich 147, 153, we said:

"The test of an implied contract for compensation is whether such services were performed under circumstances fairly raising a presumption that the parties understood and intended that they should be paid for, or at least that reasonable men in like situation as those who received and are benefited by the service naturally would and ought to understand and expect compensation was to be paid."

Plaintiff contends that the court erred in allowing witnesses to testify in regard to the testimony of Daniels as given at the trial in the municipal court. CL 1948, § 617.65 (Stat Ann § 27.914) sets forth that matters equally within the knowledge of the deceased are not permissible, but does provide:

"That when the testimony or deposition of any witness has once been taken and used (or shall have heretofore been taken and used) upon the trial of any cause, and the same was, when so taken and

used, competent and admissible under this section, the subsequent death or incompetency of such witness or of any other person shall not render such testimony incompetent under this section, but such testimony shall be received upon any subsequent trial of such cause."

This provision of the statute would allow evidence as to Daniels' testimony in the municipal court. Besides this, the record discloses that Daniels' attorney testified that Daniels' testimony in the municipal court was to the effect that he did not authorize the repairs to the car. By so testifying plaintiff not only waived objections to the witnesses of defendant but, also, the statute.

In *Newton* v. *Freeman,* 213 Mich 673, 677, 678, this Court stated:

" 'The opposite party by so introducing the prohibited testimony has waived the statute. The other protected party may either: 1. Object to the testimony and rely upon his objection; 2. Let the testimony be received without objection, in which event he also waives the statute; or 3. Notwithstanding his objection, offer equally incompetent testimony as to the same matter, in which event he waives not only his objection but also the statute.' "

Judgment affirmed, with costs to appellee.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, VOELKER, CARR, and BLACK, JJ., concurred.